## No. 10,346.

## COLORADO LIFE CO. *v.* MADDEN.

Decided June 4, 1923. Rehearing denied July 2, 1923.

Action for commission on the sale of capital stock of a life insurance corporation. Judgment for plaintiff.

### *Affirmed.*

1. APPEAL AND ERROR—*Sufficiency of Evidence.* Evidence reviewed and held to support the finding of the court that plaintiff was employed by defendant to sell its stock.

2. STATUTES—*Interpretation.* Section 2501, C. L. '21, prohibiting newly organized insurance companies from doing business until they comply with certain statutory requirements, held to prohibit the transaction of insurance business, but not the sale of corporate stock.

3. INSURANCE—*Corporations—Sale of Stock.* A life insurance corporation held liable for commissions on the sale of its stock made on behalf of the company.

4. BROKERS—*Contract for Sale of Stock of Insurance Company.* A life insurance corporation cannot escape a contract for paying commission for the sale of its stock, after affirming the acts of the broker and accepting the benefit of his labor.

5. INSURANCE—*Sale of Company Stock.* The contention of a life insurance corporation that it was not liable for a commission on the sale of its capital stock because at the time it entered into the contract of sale, it had no stock to dispose of, overruled.

6. *Sale of Company Stock—Commission.* A contract to pay twenty per cent commission for the sale of the stock of a newly organized insurance company, held not to be invalid as in violation of § 2503, C. L. '21, it not appearing that more than twenty per cent of the amount realized from the sale of stock was used in organization expenses.

*Error to the District Court of the City and County of Denver, Hon. Francis E. Bouck, Judge.*

Mr. S. HARRISON WHITE, Mr. H. E. LUTHE, for plaintiff in error.

Mr. FRANK MCLAUGHLIN, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THESE parties appeared in reverse order in the trial court and are hereinafter designated as there.

Plaintiff brought this action July 24, 1920, for an alleged balance due as commission on sales made by him of defendant's capital stock. The jury returned a verdict for plaintiff in the sum of $4625.00 and to review the judgment thereupon entered this writ is prosecuted.

That plaintiff sold the stock and earned the commission, and that it was unpaid, are clearly established by the evidence. Defendant contends that plaintiff's contract was with the Western Holding Company and that plaintiff must look to it.

The Colorado Life Company was incorporated in Colorado in October, 1919, and on May 26, 1920, received a certificate authorizing it to write life insurance. Kendall was its president, Miller its secretary and general manager, and these men, with Gates, constituted its board of directors. The Western Holding Company was a West Virginia corporation. Its business was the organization of life insurance companies and the purchase and sale of their stock. Kendall was its president, Miller its secretary (but not general manager), and these men, with Gates, were members of its board of directors.

These two companies occupied the same office, used the same desk and had the same stenographer. Their transactions were involved and confusing and the record before us leaves a strong impression that they were intended to be so. As to which employed plaintiff the evidence is conflicting. Supporting his contention that it was defendant, are letters of direction and instruction written by Miller on the stationery of the Life Company and signed by him as "Sec'y-Gen. Mgr.", a statement of account given by Miller under date of May 27, 1920, showing that the transactions

were with defendant, and an annual report of the Holding Company made to the Secretary of State under date of February 28, 1920, when it now claims to have owned approximately $200,000 worth of the stock of defendant, showing that it held but $2000 worth thereof. Defendant's explanation of these letters and statement of account is that they were errors of the stenographer which escaped the keen eye of Miller who supervised, signed and mailed them. The explanation impresses us about as much as it apparently did the jury. The claim that the Life Company did not employ plaintiff seems to have been an after thought and too long after to be thoughtful. July 6, 1920, counsel for plaintiff wrote defendant demanding settlement and threatening suit. Miller answered on the stationery of the Life Company, under date of July 9, claiming plaintiff had already been overpaid but making no suggestion that his contract was with another. We think the evidence ample to support the finding that plaintiff did business with defendant not the Holding Company.

Assuming that plaintiff's dealing was with defendant the latter says that it was, at the date of the alleged contract, prohibited by statute from selling its stock, which fact must be held known, and was actually known, to plaintiff. The alleged prohibition is found, if at all, in section 2501, C. L. 1921. Said section provides that a copy of the articles of incorporation of such a company as defendant shall, on its organization, be filed with the insurance commissioner and submitted by him to the Attorney General for examination. If found legal by that officer he is directed to so certify to the commissioner who then commissions the person named in the articles to open books for the subscription of the capital stock. When the stock is all subscribed and the required cash has been paid in and deposited with the commissioner the latter must cause an examination and certification under oath to be made. That certificate must be recorded "before the authority to commence business is granted." It is therefore urged that until this section was complied with the Life Company as

such could transact *no business* and that its stock could be · sold only by the state acting through the commissioners so appointed. The "business" which the company may not transact until this section is complied with is, however, clearly the business for which it was created, i. e., the writing of life insurance. Not only is this the reasonable interpretation of the section itself but that interpretation is put beyond question by section 2491, C. L. 1921, par. 1, which limits the prohibition to "insurance business." The entire question, however, becomes immaterial in view of the fact that the commissioners appointed to represent the state are the persons who, under the law, represent the company. The statutes impose upon them certain specific duties in violation of which they fix upon them certain personal responsibilities. Their sales of stock must be held made on behalf of the company ·as well as on behalf of the state. The corporation itself can no more escape liability for the payment of commissions or other expenses incurred by the commissioners in the discharge of duties devolved upon them by statute than it can escape responsibility for the delivery of stock sold by them. There is ample evidence to show that the commissioners, or a majority of them, were fully cognizant of the conduct of Miller in his transactions with plaintiff. For all practical purposes these men were at the time in question not only the commissioners of the state but, by reason of their relation to defendant, they were the Life Company. Whether they contracted with plaintiff in one capacity or the other, defendant is bound.

We have carefully examined *Greiger v. Salzer, et al.,* 63 Colo. 167, 165 Pac. 240; and *Lucero v. Life Ins. Co.,* 67 Colo. 322, 184 Pac. 379; and find nothing in either opinion inconsistent with the foregoing or with what is hereinafter said. In neither of said cases had the final certificate authorizing the company to write life insurance issued and. neither is in point.

Defendant next says that the contract with plaintiff can not stand because at the date thereof it had no stock, having theretofore sold its entire issue to the Holding Com-

pany. There are at least two answers to this proposition:
1. Defendant could not thus escape its contract with plaintiff after it had affirmed his acts and taken the benefit of his labor. 2. At the time of the contract with plaintiff one-half of defendant's capital stock was undisposed of. October 21, 1919, the Western Holding Company subscribed for 2,000 shares at not less than $50.00 per share, or a total of $100,000, and on January 10, 1920 (after the contract with plaintiff), it subscribed for an additional 2000 shares, making the whole issue. Both these subscriptions were in writing. The first was accepted October 22, 1919, but the second does not appear to have been accepted until March 1, 1920, after much of the stock handled by plaintiff had been sold. There is evidence that the Holding Company at the time of its first subscription orally agreed to purchase the remaining 2000 shares. That evidence, however, is hazy, the agreement was not then consummated, and this record convinces us, as we must assume it did the trial court, that at the time defendant (or the commissioners) contracted with plaintiff half of the stock was undisposed of.

It is next urged that the compensation which plaintiff says he was to receive, i. e., 20 per cent, was expressly prohibited by a statute which must be held to be, and in fact was, within his knowledge, and for that reason no recovery under said contract can be had. By section 2503, C. L. 1921, it is made unlawful to use more than 20 per cent of the total amount realized from the sale of the capital stock of such a corporation for organization expenses, including commission on the sale of stock, rent, clerk hire and literature. Plaintiff can not be charged with knowledge of the expenses of selling other stock than that handled by him or of the amount expended for rent, clerk hire and literature. So long as the commissioners kept within the statutory limit they might pay one rate for selling one share of stock and another rate for another. Plaintiff only handled something less than 500 out of a total of 4000 shares. The Holding Company's first subscription was for $100,000

worth of said stock and the record discloses no commission paid on that sale. There would still remain, of the 20 per cent allowed, a tidy sum for rent, clerk hire and literature and commission for selling the stock not subscribed by the Holding Company or sold by plaintiff. The contention is without merit.

In view of the foregoing the necessity for examining other assignments is obviated.

The judgment is affirmed.

### On Rehearing.

Our attention is called to an erroneous reference in the original opinion. That reference has been stricken.

This record discloses that plaintiff took notes for part of the stock sold, some of which notes were discounted by the company and others have not been paid. It is urged that such transactions were void under section 9, article XV of our Constitution and for that reason plaintiff can not recover. If this is a good defense to the claim for commission it would be a good defense to an action by the company on said notes. The contrary is held in *Boldt v. Motor Securities Co.*, No. 10673, this day decided.

The opinion is modified as above indicated and the rehearing denied.