The judgment of the court below will be reversed, and judgment will be entered here for the plaintiff in error.

*Judgment reversed and judgment for plaintiff in error.*

Hamilton, P. J., and Mills, J., concur.

The Anchor Life & Accident Ins. Co. *v.* Taylor.

(Decided June 25, 1928.)

*Mr. A. H. Martin,* for plaintiff in error.
*Mr. Perry B. Jackson* and *Mr. H. L. Thomas,* for defendant in error.

MAUCK, J.   Eugene A. Taylor brought an action against the insurance company in *quantum meruit* for services rendered the company from March 1, 1924, to April 15, 1926, in the sum of $3,500.   Without following the somewhat devious course of the

pleadings in the case, it is sufficient to say that the defendant, after denying generally, sought repeatedly to interpose two other defenses. One of these was that, at the time the services were claimed to have been rendered by the plaintiff to the defendant, the latter was not licensed to do an insurance business, and was not authorized to make a contract with the plaintiff for services. Another defense was that, during the time mentioned, the corporation was being promoted, and that one Cheatham was the promoter; that he had employed the plaintiff, and that the latter's services were rendered to Cheatham, rather than to the defendant; that the defendant and Cheatham, the promoter, were limited by law to expenditure of not over 15 per cent. of the proceeds of the sales of the company's capital stock; and that more than 15 per cent. of such proceeds had been expended prior to the plaintiff's employment.

These separate defenses were stricken from the files for some reason not apparent to us; but it is sufficient to say that the defendant, after repeated efforts, was unable to interpose pleadings raising what appear to us to have been sufficient defenses. The case went to trial before a jury, and the plaintiff recovered a verdict for $3,500. Upon this verdict judgment was rendered, and it is now sought to reverse that judgment.

In the trial it developed that the defendant corporation filed articles of incorporation in 1920, for the purpose of promoting a life and accident insurance company, and that upon organization G. L. Cheatham was made president and steps taken to dispose of the capital stock preliminary to securing

a license to do business as an insurance company. The matter moved along very slowly. In 1921 Cheatham, as president, was given authority to do anything that the stockholders, board of directors, or officers of the company might do, provided that such act should be subject to the ratification of the board of directors.

It is claimed that the plaintiff was engaged to work for the defendant under this remarkable authority. Without undertaking to determine the effect of a resolution that gives authority to the president of the corporation to do anything that the stockholders, board of directors, or any one else connected with the corporation, might do, it is sufficient to say that, while the record shows that the board of directors knew that Taylor was doing some work for the company, it does not show that the directors knew that he was employed by the company and on the company's account, and consequently does not show that the directors have ratified his employment. On the examination of Cheatham it was brought out that in 1921 a tripartite contract was signed by the Lake Shore Banking & Trust Company, the superintendent of insurance of the state of Ohio, and the defendant company, under the terms of which all proceeds of the sale of stock were to be held in trust by the trust company, except 10 per cent. thereof, which could be devoted to the expenses of promotion. By subsequent agreement, signed by the same parties, the percentage for promotion expenses was increased to 15 per cent. While it does not appear in this case whether that contract was carried out in its entirety, it is now referred to only as showing that the corporation

was in an embryonic state in 1921, and continued so to be until it was licensed in 1927, and was in that condition during the time when the plaintiff claims to have rendered the services for which he sought recovery. Whether the plaintiff knew of the contract or not, he knew that the company was not so far organized as to be entitled to a license to carry on the business for which it was incorporated. He knew this, because the record shows that the only work that he had to do was in connection with the sale of the company's corporate stock, preliminary to securing a license.

The law of this state with reference to the promotion of insurance companies is definite. It provides that the promotion and organization expenses of such companies shall not exceed 15 per cent. of the amount actually raised upon stock subscriptions, Section 6373-12, General Code. The purpose of this provision is clear. It contemplates that 85 per cent. of the funds paid in shall be safe from appropriation by promoters, and be held in trust for the benefit of those subscribing to the corporate stock. One dealing with a trustee is charged with the knowledge of the trustee's powers. The plaintiff knew, when he went to work, that his employer was a trustee, and he knew the limitations of that trustee's power. Out of the 15 per cent. available for the expenses must come all the expenses of promotion, including the plaintiff's compensation.

Plaintiff at the trial undertook to avoid the law's effect by saying that he was not to be actually paid for his services until after the company was licensed. This looks like an afterthought, inasmuch as he brought this suit before the company obtained its

license. This is immaterial, however. If a promoter can use 15 per cent. of the money paid in on stock subscriptions in partial satisfaction of the promotion expenses, and then incur debts which the corporation as soon as licensed is required to pay out of the funds theretofore immune, the statute is worse than useless. Such a statute would afford no protection at all to those whom it was designed to protect. Its presence on the statute books would be a decoy for credulous subscribers to stock, inducing in them the belief that 85 per cent. of their subscriptions was impounded for their benefit, when, in fact, it was only to be conserved until a license was obtained, at which time it would become a prey to those who had thus evaded the statute. Such an interpretation of the statute would make the statute itself an instrument of fraud.

The only construction that the statute needs is found in the simple language of the statute itself, to wit, that "the amount of such commission, promotion and organization expenses shall in no case exceed 15 per cent." This means that, while an insurance corporation is in process of formation, preliminary to its license to do the business for which it is incorporated, it is beyond the power of the corporation to contract for preliminary expenses beyond the 15 per cent. prescribed by statute. The trial court refused the defendant leave to set up defenses consistent with the statute as interpreted. This was error.

The trial court charged the jury in effect that, after the defendant was licensed, it became liable on a contract made in violation of the statute above referred to. This, for like reasons, was erroneous.

The judgment of the court of common pleas is reversed, and the case remanded for further proceedings in accordance herewith.

*Judgment reversed and cause remanded.*

MIDDLETON and LEMERT, JJ., concur.

MIDDLETON and MAUCK, JJ., of the Fourth Appellate District, and LEMERT, J., of the Fifth Appellate District, sitting in place of SULLIVAN, VICKERY and LEVINE, JJ., of the Eighth Appellate District.