EHLERS-MANN & ASSOCIATES, INC., Respondent, v. MADISON AMERICAN GUARANTY INSURANCE CORPORATION and another, Appellants.

*June 1—June 25, 1965.*

For the appellants there were briefs by *Immell, Herro, Buehner, DeWitt & Sundby* of Madison, and oral argument by *Jack R. DeWitt.*

For the respondent there was a brief by *Milo G. Flaten* and *Huiskamp, Brewster & Flaten,* all of Madison, and oral argument by *Milo G. Flaten.*

HALLOWS, J.   The appellants attack the sufficiency of the credible evidence to support the finding the plaintiff entered into a contract with the management corporation.  It is not seriously contended a contract was not entered into on behalf of the defendant insurance corporation.  So far as it is material to this appeal, it is sufficient to state the insurance corporation was organized to engage in the business of insurance

with the authorized capital stock of one million shares of the par value of $1 per share. It was proposed that 650,000 shares of stock would be sold to the public at $1.50 per share and until a minimum of 200,000 shares were sold the proceeds would be impounded in accordance with an agreement with the department of securities. The management corporation was organized for the purpose of managing the business operation of the insurance corporation, but there is testimony it was to assist in and promote the sale of stock of the insurance corporation. The officers and directors were basically the same for both corporations.

The directors and those interested in promoting the insurance and the management corporations were not experienced insurance executives nor skilled in the sale of insurance stock. Early in October, 1961, Harry Walsh, president of the insurance corporation, contacted Zane Mann, the plaintiff's vice-president with the view of securing the plaintiff's services in the promotion and sale of the stock. After conferences between Mann and the board of directors a general understanding was arrived at which was later confirmed by letter. The agreed remuneration for the plaintiff acting as a financial consultant and adviser was $20,000 contingent upon the successful selling of the public issue.

During the plaintiff's employment a sales organization was set up for the insurance corporation, and it started to sell its stock in January of 1962. By July, 1962, only some $300,000 of stock had been sold, but the insurance company was then entitled to engage in business. About that time new officers had obtained control of the insurance and management corporations. They were dissatisfied with the plaintiff's services and terminated the contract by the discharge of Mann. The sale of the 650,000 shares of stock was completed by the insurance corporation in November of 1963.

The evidence is in conflict whether the management corporation as well as the insurance corporation entered into the

agreement with the plaintiff. In this period of the history of the two corporations very little distinction was made between them in the dealings with the plaintiff. Such is often the case with promoters when corporations have interlocking boards and officers. There is evidence the then president of the corporations and also their treasurer and assistant secretary understood the agreement with the plaintiff was on behalf of both corporations. The letter discharging the plaintiff was signed on behalf of both corporations. It was apparent from the record Zane Mann and those representing the insurance corporation and management corporation thought the oral contract was entered into by both of the defendants. Viewing the evidence in the light most favorable to the verdict, which we must do on appeal, there is sufficient credible evidence which under a reasonable view supports the jury finding and, therefore, it will not be disturbed. *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 101 N. W. (2d) 83; *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 120 N. W. (2d) 692; *Webb v. Wisconsin Southern Gas Co., Inc.* (1965), 27 Wis. (2d) 343, 134 N. W. (2d) 407.

Defendants contend that in any event the judgment against the insurance corporation must be limited to $40.47 because of the application of sec. 201.10, Stats. Although this law in one form or another has been in existence over fifty years, it has not been interpreted by this court. This section [1] prohibits any person in promoting an insurance corporation or the sale of its stock from selling such stock unless the contract of sale contain a provision stating, among other

---

[1] "201.10 STOCK COMPANIES; PROMOTION; FUNDS; COMMISSIONS; LITERATURE; CONTRACTS. (1) No person shall, for the purpose of organizing or promoting any insurance corporation, domestic or foreign, or promoting the sale of stock of such corporation by it as principal or agent, sell or agree or attempt to sell within this state any stock in such insurance corporation, unless the contract shall be in writing and contain a provision in the following language: 'No sum shall be used for commission, promotion and organization ex-

things, that no sum shall be used for commissions, promotion and organization expenses in excess of a certain percent but in no event in excess of 15 percent of the amount actually paid for the stock and the remainder of the payments shall be held or invested and used only in the conduct of the business of insurance. The purpose of such provision is to give some assurance that at least 85 percent of the funds paid in shall not be appropriated by the promoters but held for the benefit of the business. 44 C. J. S., Insurance, p. 632, sec. 99; see 9 Op. Atty. Gen. (1920), 238. The remedies provided for violation of the section are a criminal penalty (sub. (7))

penses on account of any share of stock in this corporation, in excess of . . . . per cent of the amount actually paid upon separate subscriptions (or in lieu thereof there may be inserted, "or $ . . . . . per share from every fully paid subscription"), for such stock, and the remainder of such payments shall be held or invested as authorized by the law governing such insurance corporation and held by the organizers (or trustees, as the case may be) and the directors and officers of such corporation after organization as bailees for the subscriber, to be used only in the conduct of the business of insurance by such corporation after having been licensed therefor by proper authority.' The term 'stock,' as used in this section, shall include bonds and any other evidences of debt or of interest in the profits of any such corporation. . . .

"(3) Every contract within subsection (1) shall give the names of the organizers (or trustees as the case may be) and their residences, the par value of the shares, and the prices at which shares have been, are, or are to be sold, the number of shares at each price, the total number of shares, and be filled in with the percentage or amount which may be used for commission, promotion or organization expenses, which together shall not exceed fifteen per cent of the amount actually paid upon separate subscriptions for such stock. . . .

"(7) Any person violating this section shall be punished by a fine of not less than twenty-five dollars nor more than one thousand dollars, or by imprisonment in the county jail not exceeding six months, or by both such fine and imprisonment.

"(8) A contract for subscription to or the purchase of stock in any insurance corporation not conforming to the provisions of this section shall be valid and enforcible in favor of the subscriber or purchaser, but shall not be valid or enforcible in favor of the corporation or any person selling such stock, either as principal or agent."

against the violator, normally the promoter, and the right (sub. (8)) of the subscribers to void their subscription. Subscriptions, however, are valid and enforceable by the subscribers.

It is contended by the defendants that since the stock subscriptions amounted to $975,000, the promotional expenses could not exceed 15 percent thereof, or $146,250, and since during the years 1962 and 1963 a total of $146,209.53 was expended, only $40.47 was available for the plaintiff. This contention would add to the express sanctions of the section a third, that of the unenforceability of a contract or that part of a contract which exceeds the 15 percent prohibition. We do not read the statute as voiding or rendering unenforceable contracts which taken together with other contracts and expenses of promotion exceed 15 percent of the proceeds of the sale of stock. If the contracts for such expenditures were void or unenforceable, it would be impossible for promoters to violate the statute and they could thus immunize themselves from the criminal penalties of the section while securing the benefits of their acts. We think the remedies granted by the statute in creating the prohibition against the promoters are exclusive and the statute is not a defense to an otherwise enforceable contract which constitutes an expense of promoting or organizing the corporation or the sale of its stock. See *Burke v. Madison* (1962), 17 Wis. (2d) 623, 117 N. W. (2d) 580, 118 N. W. (2d) 898; *Waisbren v. Blink* (1932), 207 Wis. 619, 242 N. W. 169; *Clancy v. Fire and Police Comm.* (1912), 150 Wis. 630, 138 N. W. 109. Generally persons dealing with the promoters have no way to control the promoters or see that they comply with the statute. The statute is aimed at promoters, not the voiding of contracts with innocent persons.

No doubt the Wisconsin department of securities can suspend registration of securities upon discovery that a company is violating this section and its counterpart, the rule of the

department set forth in 6 Wis. Adm. Code, SEC 1.10; but, that question is not before us.

We have found only three cases construing somewhat similar statutes. In *Colorado Life Co. v. Madden* (1923), 73 Colo. 504, 216 Pac. 551, suit was brought for a 20 percent commission on the sale of stock. The statute prohibited the use of more than 20 percent of the proceeds for organizational expenses. It was held the plaintiff could not be charged with knowledge of other organizational expenses and recovery was allowed. However, in *Anchor Life & Accident Ins. Co. v. Taylor* (1928), 29 Ohio App. 428, 163 N. E. 631, which was a suit in *quantum meruit* for services in selling the defendant's insurance stock, a defense that the defendant had expended and reached the 15 percent limitation for promotional expenses was stricken by the trial court. On appeal the defense was allowed on the theory it was beyond the corporation's power to contract for expenses in excess of the 15 percent limitation. In *McCormick v. Life Ins. Corp. of America* (1957), 6 Utah (2d) 170, 308 Pac. (2d) 949, which was a suit to recover a 20 percent commission for the sale of stock in converting a mutual insurance company into a stock company, the statute provided a 15 percent limitation. The plaintiff had been paid 20 percent on some sales and was suing for commissions on the balance. The court held the plaintiff could only recover 15 percent on the total sales and the amount of the contract in excess thereof was unenforceable. However, the court stated it was not concerned whether the 15 percent in fact exceeded together with other expenses 15 percent of the proceeds. Under this decision recovery may in fact result in expenses exceeding the prohibition of the statute.

These cases do not command an interpretation of our statute but they are enlightening. From these cases it does not appear the statutes involved provided any remedy for its violation. The remedies provided by sec. 201.10 (7) and

(8) do not include rendering contracts for promotional services either void or unenforceable. Likewise, we find no intention of the legislature in the purpose or the language of the section to make void or unenforceable contracts other than subscriptions. As a practical matter, it would be difficult if not impossible to find which contracts would be void in whole or in part if the race is to the diligent for payment and without a determination of what are commission, promotion, and organization expenses and the total amount thereof. The effectiveness of the section must depend upon its own sanctions and if the section is violated, those injured, *i.e.*, the subscribers to the stock, have both a civil and a criminal remedy.

The defendants assign as error the instruction of the court relating to what constitutes a legal justification for breach of contract. The verdict inquired whether the plaintiff breached any duty under the contract of employment and if so whether such breach constituted a justifiable ground for discharging Mr. Mann without compensation. In respect to the latter inquiry, the court instructed that a breach of the contract was not a legal justification for the discharge "unless the breach evidences moral turpitude or conduct that is manifestly injurious to the employer's interest." Whether this is a correct statement of the law involving a right to terminate a contract involving personal services because of a breach, we need not decide because the jury found the plaintiff did not breach its contract. Consequently, the jury never reached the inquiry involving justification for the defendants' termination of the contract. Assuming the instruction to be erroneous, we find no evidence it affected the answers to the other questions.

On its petition for review the plaintiff argues it is entitled to interest on the judgment from the day the defendants wrongfully terminated the contract. We find no motion requesting such interest or order denying such interest in

the record. The record discloses only a requested instruction for interest from the day of the breach, which instruction was not given. But the plaintiff is not entitled to interest from the day of the breach of the contract. *Giffen v. Tigerton Lumber Co.* (1965), 26 Wis. (2d) 327, 132 N. W. (2d) 572, and *Laycock v. Parker* (1899), 103 Wis. 161, 79 N. W. 327, do not so hold. In *Giffen* there was a liability to pay the plaintiff's attorney's fees at the time of the demand for and the refusal of payment. The demand made the payment due. Nor is *Olson v. Herman Farmers Mut. Ins. Co.* (1925), 187 Wis. 15, 203 N. W. 743, controlling. The denial of liability under the insurance policy in that case was a waiver of the sixty-day period and the payment of its liability then accrued.

In the present case the contract provided the plaintiff's fee was not to be paid until the issue was sold which did not occur until November, 1963, a year and a half after the contract with the plaintiff was breached by the defendants. The defendants' breach did not accelerate the time of payment. At most, this would be the earliest date for the commencement of interest since the fee which is being sued for was not payable prior to that time. This issue, however, is not before us because the record does not disclose it was properly presented to the trial court and preserved for appeal.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.